UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACOB FAY LUKE, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-11347** |
| **TROOPER ANTHONY DORRIS, ET. AL** | **SECTION: "A"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.      **Factual Background**

A.   **The Complaint**

The plaintiff, Jacob Fay Luke Sr. ("Luke"), is a pretrial detainee housed in the Terrebonne Parish Jail ("TPJ") in Houma, Louisiana. Luke filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Troopers Anthony Dorris, Brandon Bolden, and Michael Bennett alleging that on April 11, 2019, the officers used excessive force in effecting his arrest. Luke contends, on April 11, that he was in his family's 2001 Impala right in front of the police station when he noticed that a police vehicle was in the left lane behind them. He contends that he was headed to Mobile Estate Drive where his home was located when despite his lawful driving,

the officer put on his lights to pull him over. Luke contends that he had insurance on his vehicle but did not know that the vehicle he was driving had a license plate that was switched. Rather than stop the vehicle when the officer tried to pull him over, Luke sped up and fled. Trooper Dorris chased after Luke on foot and shot him with a taser in the arm. However, Luke contends that he removed the taser out of his arm. He was then shot again by Dorris with the taser in the back. Dorris then jumped on Luke's back, put his arm around Luke's neck at which point Luke removed the second taser.

Luke acknowledges that he tried to get away from the officer because he perceived the force as illegal. He contends that Troopers Bolden and Bennett arrived and they " beat and kicked him."  He ultimately was placed in the ambulance and as a result of the incident he suffered shoulder and neck pain, damaged nerves in his arm, and legs with numbness.

**B. The Police Report**

Luke also attached the police report to his complaint. R. Doc. 1-1. The report indicates that Trooper Doris was on patrol on La 24 N near US 90 when he observed a maroon Chevrolet Impala bearing license RZZ348. He ran a computer check on the license plate and learned that the plate was switched; so, he moved behind the vehicle and activated his emergency lights to conduct a traffic stop. The vehicle, however, made a right turn, ultimately sped off, and a chase ensued.

Trooper Dorris ended up chasing via vehicle Luke until Luke exited the Impala and then a foot chase ensued. The report indicates that Trooper Dorris while giving loud verbal commands, deployed his taser, Luke fell to the ground and attempted to get back up; so, Trooper Dorris deployed his taser for a second time and despite this Luke still continued to try to flee. The report indicates that Officer Dorris then went "hands on" with Luke in an attempt to effect the arrest and

Luke resisted striking Dorris in the face several times. Trooper Dorris continued to try to effect the arrest when they rolled into a ditch and Dorris saw a black fixed blade knife that was concealed on Luke's person fall out. Trooper Dorris grabbed the knife and then threw it into the ditch.

Luke broke free from the attempted arrest and began walking northbound, Trooper Dorris pulled his pistol and gave Luke a command to get to the ground, they walked behind two residences when Trooper Bennett arrived and took Luke into custody without further incidents. When the Acadian Ambulance arrived to examined Luke, he was not cooperative and tried to bite a paramedic, though he later complied with the attempt to treat him and was transported to Chabert Medical Center for medical treatment.

After Luke was treated medically, the officers searched the car and found a glass pipe with white residue, suspected to methamphetamine, and a clear plastic bag tied in a knot containing a white crystal substance, also suspected to be methamphetamine. Several rounds of handgun ammunition and a silver pellet gun were located in the vehicle. They also went back to the ditch to retrieve the knife. Trooper Dorris indicated that while he struggled with Luke, he observed signs of impairment including no response to pain, dilated pupils and glassy eyes. Trooper Dorris concluded that Luke showed signs of being under the influence of narcotics and he was charged with DWI by Trooper Bolden; Luke also had several outstanding warrants. Luke was arrested and charged with DWI First Offense, Resisting an Officer with Force or Violence, Illegal Carrying of Weapons, Switched Licensed Plate, Reckless Operation, Battery of a Police Officer Possession of Schedule II (Methamphetamine), Aggravated Flight from an Officer, Simple Criminal Damage to Property, Possession of Drug Paraphernalia and Suspended Drivers License. The criminal trial of Mr. Luke is currently set for September 11, 2020.

## II. Standards of Review

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

## III. Analysis

Luke alleges that Officer Dorris, and the other assisting officers, used excessive force against him in the course of his arrest. He alleges that he fled because he perceived that Officer Dorris posed a threat to his life because of various accounts of citizens dying at the hands of the

police. Luke, therefore, contends that the force used, including the multiple instances of tasing him, striking him when he would not submit to being hand cuffed, and the subsequent efforts by the assisting officers, was excessive in violation of his constitutional rights. Luke claims that the initial stop was unlawful, that the officers used excessive force when he was tased and even after he was treated by the EMT because they grabbed him by the arm like they "were dragging a dog around" when bringing him back to the patrol car.

The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. 1983 to impose liability on police officers who used excessive force against citizens. To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive and (3) the excessiveness of which was clearly unreasonable. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

However, if Luke is convicted of resisting arrest, he may not be entitled to seek relief for these claims until the conviction is reversed, expunged, declared invalid or called into question by a federal court's issuance of habeas corpus. *Heck v. Humphrey*, 512 U.S, 477 (1994) (holding that a successful civil right action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid or called into question by a federal court's issuance of a writ of habeas corpus). While the rule in *Heck* does not extend to pending criminal matters, successful false-arrest, and excessive-force claims, under plaintiff's allegations, it could necessarily imply the invalidity of any future conviction. *See Wallace v. Kato*, 549 U.S 384, 393-

94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated not to pending criminal charges); *Thomas v. Pohlmann,* 681 F. App'x 401, 405 (5th Cir. 2017) ("Prevailing on the false-arrest claim-and establishing that the officer lacked probable cause to charge plaintiff with resisting arrest-could necessarily imply the invalidity of a conviction because the claim is essentially a collateral attack on a criminal judgment's validity."); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("the plaintiff's proof to establish his false arrest claim, i.e., that there was no probable cause to arrest for the crime he was convicted of would demonstrate the invalidity of the conviction."); s*ee also Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (finding, where the plaintiff was convicted of resisting arrest encounter, and his complaint proclaims his innocence throughout the entire arrest encounter, and not merely a discrete part of it, that the claims are barred by *Heck*) (quoting *Daigre v. City of Waveland, Miss.,* 549 F. App'x 283, 287 (5th Cir. 2013)).

Luke acknowledges that he did not comply with the officer's command to stop his vehicle. Instead he fled, ditched his car and fought the officer. He acknowledged that he was tased on two times while he was not complying. He admitted that he removed the taser from his arm and tried to remove the one from his back while fighting Officer Dorris in his attempt to be free, albeit because he allegedly feared for his life. Certainly, in this situation, if Luke were somehow to prevail on the excessive force claim, it would necessarily imply the invalidity of a conviction.

"Federal courts may stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes." *Hall v. Baker*, No. CV 19-1585, 2020 WL 806613, at *3 (W.D. La. Jan. 30, 2020), *report and recommendation adopted*, No. CV 19-1585, 2020 WL 814067 (W.D. La. Feb. 18, 2020); *see also*

*Wallace*, 549 U.S. at 393–94 ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."). Consequently, because Luke filed this civil rights claim attacking the legality of his arrest, prosecution and detention, this claim should be stayed until the prosecution concludes.

## IV.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jacob Fay Luke, Sr.'s 42 U.S.C. § 1983 claims against the defendants, Trooper Anthon Dorris, Trooper Brandon Bolden, and Trooper Michael Bennett, be **STAYED** under the following conditions:

a. If plaintiff intends to proceed with these claims, he must within thirty (30) days of the date of the criminal proceedings against him conclude, file a motion to lift the stay;

b. If the stay is lifted and the Court finds that Plaintiff's claims the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;

c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses in this action until the criminal state court proceedings conclude; and

d. Defendants shall not be required to answer these particular claims during the stay and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

7

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996). [1]

New Orleans, Louisiana, this 15th day of August, 2020.

KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.